IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHAMSIDIN ALI a/k/a ROBERT SAUNDERS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 15-1089 (MN) |
| COMMISSIONER ROBERT COUPE, et al., | ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Shamsidin Ali a/k/a Robert Saunders, James T. Vaughn Correctional Center, Smyrna, Delaware. *Pro Se* Plaintiff.

George Thomas Lees, III, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendants.

December 17, 2019
Wilmington, Delaware



**NOREIKA, U.S. District Judge:**

Plaintiff Shamsidin Ali a/k/ Robert Saunders ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983[1] and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. (D.I. 2). He appears *pro se* and has paid the filing fee.[2] Defendants Robert Coupe ("Coupe"), David Pierce ("Pierce") and Ronald Hosterman ("Hosterman")[3] ("Defendants") move for summary judgment. (D.I. 61). Plaintiff opposes. The matter has been fully briefed.

## I.     BACKGROUND

Plaintiff, along with nine other inmates, file an action in this Court on February 3, 2010, against former Delaware Department of Correction ("DOC") Commissioner Carl Danberg ("Danberg"), then JTVCC Assistant Warden Pierce, Hosterman, and several other individuals alleging violations of RLUIPA and raising claims under 42 U.S.C. § 1983. *See Cole v. Danberg*, C.A. No. 10-088-CFC ("2010 action"); (D.I. 62-1 at 3-11). The claims raised in the 2010 action included the denial of pre-Ramadan meals; the denial of halal meals; disparate treatment because Jewish inmates received halal (kosher) meals; and the denial of two feasts, the feasts of EID al-Fatr and EID Al-Adha. (*Id.*). Plaintiff who has "three strikes" under 28 U.S.C. § 1915(g) was ordered to pay the required filing fee and, when he did not, his claims in the 2010 action were dismissed without prejudice on February 24, 2010. (D.I. 62-1 at 13-22).

---

[1]     When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2]     Plaintiff sought, and was denied, *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g). (*See* D.I. 5).

[3]     Misspelled by Plaintiff as "Holsterman".

Plaintiff commenced this action in November 2015. (*See* D.I. 2). The instant Complaint names former DOC Commissioner Coupe, Pierce (who had been promoted to warden), and Hosterman and raises claims under 42 U.S.C. § 1983, RLUIPA, and other Constitutional and state law claims. The Complaint alleges the denial of halal meals (D.I. 2, ¶ 12); the denial of the feasts of EID al-Fatir and EID Al-Adha (D.I. 2, ¶ 13); and disparate treatment because Jewish inmates received halal (kosher) meals (D.I. 2, ¶¶ 14, 15). Upon screening, the Court dismissed the claims against the DOC, the official capacities claims against Defendants under 42 U.S.C § 1983, the Delaware constitution claims that sought injunctive relief, and the RLUIPA claims that sought monetary damages. (D.I. 10 at 6-7). The remaining claims are: individual capacity damages claims under 42 U.S.C § 1983; official capacity injunctive relief claims under 42 U.S.C § 1983; individual capacity damages claims under Delaware's constitution; and official capacity injunctive relief claims under RLUIPA. (*Id*.)

Requests for admissions were served upon Plaintiff on December 10, 2018. (D.I. 44). Plaintiff belatedly responded to the requests for admissions on February 1, 2019, without seeking or receiving an extension of time from the Court. (D.I. 53). Plaintiff was deposed on March 27, 2019. (D.I. 57; D.I. 62-1 at 24). At his deposition Plaintiff clarified his responses to the requests for admissions and testified that many of his responses should have been deemed admitted. (*See* D.I. 62-1 at 81-82, 84-100, 103-106, 236-243).

Plaintiff has been incarcerated more than 40 years and has been housed at the JTVCC, Howard R. Young Correctional Institution ("HRYCI"), Sussex Correctional Institution ("SCI"), and correctional facilities in Florida and Pennsylvania. (D.I. 62-1 at 32-34). Plaintiff was housed at SCI from July 2001 until he returned to JTVCC in June 2005. (*Id*. at 50-52).

Plaintiff converted to Islam in 1961 and is a practicing Muslim. (*Id*. at 48-49). Pork products have not been served at the JTVCC since 1977. (*Id*. at 53). Plaintiff is a diabetic and testified that he had been receiving the kosher meal plan for approximately a year and a half. (*Id*. at 54). In 2006, Plaintiff submitted a grievance over the issues of the kosher meal plan, halal foods, and disparate treatment of Islamic inmates.[4] (*Id*. at 56, 86-88, 236-243). Plaintiff testified that he first requested the kosher meal plan in 2007-2008 because that meal was considered halal under the tenets of Islam, but his request was denied. (*Id*. at 55). Muslim inmates began receiving kosher meals during the first quarter of 2016. (*Id*. at 59).

Plaintiff testified that the general meal plan is not haram (*i.e.*, forbidden by Islamic law). (*Id*. at 59). He testified that the kosher meal plan offered at JTVCC satisfies Islamic dietary requirements, as does the vegetarian meal plan. (*Id*. at 66). Plaintiff has no information on the cost of providing halal meat at JTVCC, no information if it is more expensive to provide halal meat, and no information on the DOC food services budget for JTVCC. (*Id*. at 66).

Plaintiff testified that when he began his incarceration at JTVCC in 1976 and through the early 2000's, both the EID al-Fatir and EID al-Adha feasts were offered. (*Id*. at 70-71). Inmates were allowed to have outside family members bring in food and attend the feasts. (*Id*. at 71). Plaintiff had been housed at SCI, and when he returned to JTVCC in 2005, the feast celebrations with family members in attendance and outside food had stopped and those who wished to celebrate the two feasts were allowed cake and juice. (*Id*. at 72-73). The feasts with cake and juice stopped in the latter part of 2006. (*Id*. at 72).

---

[4]     Plaintiff testified that a grievance he submitted in 2012 raised the same issues and claims as those in the 2006 grievance. (*Id*. at 149).

Plaintiff was part of a group that appealed the discontinuance of the feasts in 2006. (*Id.* at 74). In 2009, Plaintiff was part of a group who wrote to then JTVCC Warden Perry Phelps ("Phelps") about the feasts. (*Id*. at 74-75). Inmate Donald Cole ("Cole"), who remains a plaintiff in the pending 2010 action, was part of that group. (*Id*. at 75).

When questioned about the 2010 action, Plaintiff admitted in responses to requests for admission and during his deposition, that he signed the 2010 Complaint. (*Id*. at 76, 247 at Nos. 1-5). The claims Plaintiff asserted in the 2010 action included denial of halal food; providing Jewish inmates, but not Muslim inmates, with halal food; denial of pre-Ramadan meal; and denial of EID al-Fatir and EID al-Adha feasts. (*Id*. at 77-78, 247-248 at Nos. 9-13). Plaintiff testified that the claims in paragraphs 2(a) and 2(b) of the instant Complaint are the same halal food claims and EID al-Fatir and EID al-Adha feasts claims raised in the 2010 action. (*Id*. at 78). Plaintiff testified that at the time of the filing of the 2010 Complaint, he was aware the feasts with outside food and family had stopped sometime prior to 2005 as he discovered upon his transfer from SCI to JTVCC in 2005 and, while housed at JTVCC when the feasts with cake and juice stopped in 2006. (*Id*. at 78-79, 83).

At his deposition, Plaintiff provided testimony and compared the alleged actions of Defendants in 2010 Complaint with the 2015 Complaint. (*Id.* at 106-116). Plaintiff testified that the 2015 Complaint "does not include any new or additional claims beyond those previously asserted in 2010." (*Id*. at 130). He testified that he sued Pierce in 2010, because of Pierce's alleged involvement in denying halal food, denying the two feasts, and different treatment of Muslim inmates compared to Jewish inmates. (*Id*. at 108-109). Plaintiff testified that the alleged actions by Pierce giving rise to the 2010 Complaint and the instant 2015 Complaint occurred at the latest in 2006. (*Id*. at 128-130).

Plaintiff provided similar testimony regarding the claims raised against Hosterman in the 2010 Complaint. (*Id*. at 109). He testified that all of Hosterman's alleged actions occurred in 2006 and were part of the claims brought in the 2010 action. (*Id*. at 130). Plaintiff testified that the 2015 Complaint contained the same claims against Hosterman that Plaintiff asserted against Hosterman in the 2010 action. (*Id.* at 149-150).

Plaintiff testified that he did not know what, if any, personal involvement Coupe had in the decision making process prior to 2010 and that his claims against Coupe are the same as those raised against Danberg in the 2010 action. (*Id*. at 111-112). Plaintiff testified that he sued Coupe based upon his "supervisor capacity" that Plaintiff described as "respondeat superior" and stated he had no information regarding Coupe's personal involvement in any of the actions. (*Id*. at 112-113). During the deposition, Plaintiff consented to "delete" (*i.e*., dismiss) Coupe from the action.[5] (*Id*. at 149-150).

Plaintiff testified that he received the Court's February 24, 2010 Order directing him to pay the $350.00 filing fee in the 2010 action in either February or March 2010, that he was dismissed from the 2010 action when he did not paying the filing fee, and that he received the Court's April 20, 2010 Order dismissing his claims in either April or May 2010. (*Id*. at 134-136). Plaintiff testified that he took no action after he was dismissed until almost five years later when he asserted the same claims in the instant action in November 2015. (*Id*. at 136-137).

He testified that, "as early as late 2006" he was aware of all of the claims in the 2015 Complaint and he filed the 2015 action "when we got the money together." (*Id*. at 131). Plaintiff testified that he was aware of the claims in the instant action at the time the 2010 action

---

[5]     On April 8, 2019, defense counsel sent Plaintiff a stipulation of partial dismissal for the dismissal of Coupe. (D.I. 60). The stipulation was not filed with the Court.

was filed.   (*Id*. at 131-132).   Plaintiff also testified that when the 2010 action was filed in February 2010, he was aware of the claims raised in Count III of the 2015 action, the Violation of the Delaware Constitution Article One.   (*Id*. at 133).

Plaintiff testified that he received a copy of the First Amended Complaint from the 2010 action in January 2011, read it, and understood that the claims Plaintiff Donald Cole ("Cole") asserted in January 2011 were claims that Plaintiff had.   (*Id*. at 139).   Plaintiff testified that although he recognized Cole's claims were also claims that he himself had, he delayed in filing this action until November 2015, just short of five years later.   (*Id*. at 139-140).

Defendants move for summary judgment on the grounds that:   (1) Plaintiff's claims are time-barred; and (2) the claims against Coupe fail as a matter of law.

## II.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.   *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).   A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a factual dispute is material when it "might affect the outcome of the suit under the governing law."   *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

The nonmoving party bears the burden to establish the existence of each element of his case.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor.

*Anderson*, 477 U.S. at 248; *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989).

Plaintiff's opposition to Defendants' motion for summary judgment consists solely of argument and is not accompanied by a sworn affidavit or signed under penalty of perjury. While Plaintiff cites to the applicable law in his opposition, he does not cite to the record or provide any supporting evidence for consideration by the Court. Plaintiff cannot simply assert factually unsupported allegations to meet his burden at the summary judgment stage. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## III.   DISCUSSION

### A.       Statute of Limitations

Defendants seek summary judgment on the grounds that Plaintiff's claims are barred by the applicable statute of limitations – two years for § 1983 claims and four years for the RLUIPA claims.

Plaintiff responds that Defendants admit that a "double standard existed when it came to Jewish inmate[s] being permitted basi[c] tenets of their religion." (D.I. 66 at 6). He argues that the violations have been ongoing and that his "claims include new and additional claims beyond those previously asse[r]ted in 2010." (*Id*. at 8). Plaintiff argues that the Court "has not already confronted the issues continuing violations, so the filing [is] timely." (*Id*.). Plaintiff states that the "double standards applied by the defendants based on race are new. [The] majority [of] inmates as the plaintiff are black, with all the Jewish inmates being white, race has always played important role in pract[ic]ing their religions." (*Id*.).

In an attempt to defeat Defendants' motion for summary judgment, Plaintiff raises the issue of race in his opposition. This issue, however, was not raised in his Complaint, and is not considered by the Court. The Court considers only those issues raised in the Complaint.[6] *See Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

Section 1983 has no statute of limitations of its own. *See Randall v. City of Philadelphia Law Dep't*, 919 F.3d 196, 199 (3d Cir. 2019) (citing 42 U.S.C. § 1983). Rather, it borrows the underlying state's statute of limitations for personal-injury torts. *Id.* (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Delaware, that period is two years. *See* 10 Del. C. § 8119. Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996); *See Oshiver v. Levin, Fishbein, Sedran Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) ("A claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury . . . not upon awareness that this injury constitutes a legal wrong.") (citing *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir. 1988)). Claims not filed within the two-year statute of limitations period are time-barred.

RLUIPA does not contain its own statute of limitations period. For civil actions "arising under an Act of Congress enacted after [December 1, 1990]," however, the appropriate limitations period is four years. *See* 28 U.S.C. § 1658 (2006); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (holding that four year statute of limitations applies if the plaintiff's claim against

---

[6]     In their reply brief, Defendants provided evidence that Plaintiff failed to exhaust his administrative remedies on the race discrimination claim as is required under the Prison Litigation Reform Act. Hence, even if the claim were considered by the Court, dismissal is appropriate given Plaintiff's failure to exhaust the claim.

the defendant was made possible by a post-1990 enactment). *See also First Korean Church of N.Y., Inc. v. Cheltenham Twp. Zoning Hearing Bd. & Cheltenham Twp*., C.A. No. 05-6389, 2012 WL 645992 (E.D. Pa. Feb. 29, 2012) (explaining "courts have applied the four-year catch-all statute of limitations of 28 U.S.C. § 1658(a) to RLUIPA claims"), *aff'd*, 2013 WL 362819 (3d Cir. 2013).

If a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing pattern falls within the limitations period. *Brenner v. Local*, 514, 927 F.2d 1283, 1295 (3d Cir. 1991); *see also Randall v. City of Philadelphia Law Dep't*, 919 F.3d 196. The continuing violations doctrine is an "equitable exception to the timely filing requirement." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995). "[T]he 'continuing violation doctrine' focuses on "affirmative acts of a defendant," and is not "a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." *Cowell v. Palmer Twp.*, 263 F.3d 286, 293, 295 (3d Cir. 2001). A "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *See Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982).

It is well-settled that the continuing violations doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a claim]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 154 (3d Cir. 1998) (quoting *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986)); *see also Lake v. Arnold*, 232 F.3d 360, 366-68 (3d Cir. 2000).

Plaintiff's claims are time-barred and are not saved by the continuing violation doctrine. Most notable is Plaintiff's own testimony that he was aware as early as 2010 of Defendants' alleged violations under § 1983 and RLUIPA. Indeed, he testified that his claims in the instant complaint

are the same as those raised in the 2010 action, an action he was dismissed from in February 2010 when he failed to pay the filing fee. Plaintiff's explanation for the delay is that he waited until he "got the money together." In light of the record evidence, the limitations period would not have been continuously tolled during the subsequent almost five years in which Plaintiff waited to file his complaint. Plaintiff was in possession of the requisite information related to his alleged injuries many years before filing his complaint yet he did not timely commence this action.

All claims are time-barred. Therefore, the Court will grant the Defendants' motion for summary judgment.

### B.     Personal Involvement/Respondeat Superior

Defendants also seek summary judgment on behalf of Coupe. Plaintiff testified that he named Coupe as a defendant under a respondeat superior theory and that he had no knowledge of any personal involvement by Coupe. Plaintiff did not address this ground for summary judgment in his opposition.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675-77 (2009); *Rode v. Dellarciprete*, 845 F.2d at 1207).

There is no evidence to support Plaintiff's claim against Coupe. Therefore, summary judgment will be granted in his favor.

IV.     **<u>CONCLUSION</u>**

For the above reasons, the Court will grant Defendants' motion for summary judgment. (D.I. 61).

An appropriate order will be entered.